Estate of Belle Alice Hamburger Nathan, P. L. Nathan, et al., Executors v. Commissioner.
Estate of Belle Alice Hamburger Nathan v. Commissioner
Docket No. 3992.
United States Tax Court
1946 Tax Ct. Memo LEXIS 140; 5 T.C.M. (CCH) 604; T.C.M. (RIA) 46169; July 17, 1946
*140 Claude I. Parker, Esq., Ralph W. Smith, Esq., 808 Bank of America Bldg., Los Angeles 14, Calif., J. Everett Blum, Esq., and L. A. Luce, Esq., for the petitioners. E. A. Tonjes, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: Petitioners are the duly appointed, qualified and acting executors of the estate of Belle Alice Hamburger Nathan, Deceased, said estate being administered in the Superior Court of the State of California in and for the County of Los Angeles. Their mailing address is 808 Bank of America Bldg., 650 South Spring Street, Los Angeles 14, California. This proceeding is brought to redetermine a deficiency in Federal estate tax in the amount of $103,177.16 and to procure a judgment for $76,853.19 as alleged overpayment of Federal estate tax. The question presented requires a decision as to the fair market value of the capital stock of the Hamburger Realty Company and the capital stock of A. Hamburger & Sons, Inc. as of October 13, 1941. Findings of Fact Belle Alice Hamburger Nathan died on October 13, 1940. Her executors elected to have the assets of her estate valued on the optional date of October 13, 1941. The petitioners filed *141 a Federal estate tax return on Form 706 with the collector of internal revenue, sixth district of California, and paid the tax provided therein. Among the assets owned by the decedent at her death were 425.817 shares of the common stock of A. Hamburger & Sons, Inc., and 104.167 shares of the common stock of Hamburger Realty Company. The petitioners returned the value of decedent's shares in A. Hamburger & Sons, Inc., at $983.35 per share. The respondent, in his notice of deficiency, valued said shares at $1,200 per share. The petitioners returned the value of the shares of the Hamburger Realty Company at $2,113.55 per share. The respondent, in his deficiency notice, valued said shares at $4,850 per share. At the oral hearing the respondent announced that the testimony would not sustain the valuations set forth in the deficiency notice but would sustain a valuation of $4,000 per share for the Hamburger Realty Company stock. However, in his brief the respondent contends for a valuation of $3,900 per share for the Hamburger Realty Company stock and $1,000 per share for the A. Hamburger & Sons, Inc., stock. Petitioners filed an amended petition in which they claimed the Hamburger Realty *142 Company stock was worth $1,300 per share and the A. Hamburger & Sons, Inc. stock was worth but $300 per share and, on this amended valuation, asked for a judgment for overpayment of taxes. A. Hamburger & Sons, Inc., a California corporation, had issued and outstanding 3,774.183 shares of common stock of a par value of $1,000 each. The Hamburger Realty Company, a California corporation, had issued and outstanding 1,000 shares of common stock of $1,000 par value. Neither of these companies had any stock of any other character than the common stock referred to and had issued no bonds. The stock of the Hamburger Realty Company on the basic date was owned as follows: 104.167
shares by petitioners herein;
104.167
shares by Evelyn Hamburger;
104.167
shares by Jennie H. Marx, or by a
trust created by her;
291.666
shares by David A. Hamburger Cor-
poration;
291.666
shares by David A. Hamburger as
Trustee of the Estate of M. A. Ham-
burger, deceased;
104.167
shares by A. Hamburger & Sons, Inc.
The stock of A. Hamburger & Sons, Inc., on the basic date was owned as follows: 425.817
shares by petitioners herein;
425.817
shares by Evelyn Hamburger;
425.817
shares by Jennie H. Marx, or by a
Trust created by her;
1,248.366
shares by David A. Hamburger Cor-
poration;
1,248.366
shares by David A. Hamburger as
Trustee of the Estate of M. A. Ham-
burger, deceased.
*143 All of the parties named in the two paragraphs immediately preceding this paragraph are brothers and sisters. No shares of stock of Hamburger Realty Company or of A. Hamburger & Sons, Inc. have ever been sold and each of said corporations is a closed family corporation. On the basic date the president, general and executive manager of said corporations was David A. Hamburger, aged 84 years. The vice-president of said corporations on the basic date was Evelyn Hamburger, aged 72 years. The secretary-treasurer of said corporations was P. L. Nathan, aged 76 years. Jennie H. Marx was 81 years of age on the basic date. Neither the articles of incorporation of A. Hamburger & Sons, Inc., nor of Hamburger Realty Company provide for cumulative voting of the stock. The assets, liabilities and net worth of the Hamburger Realty Co. on the basic date hereof and the book value (Col. A) and the fair market value (Col. B) thereof are as follows: Column A
Column B
Fair Mar-
Book Value
ket Value
ASSETS: A. Cash on hand $10,720.74 and Accounts Receivable $145.96
$ 10,866.70
$ 10,866.70
B. Stocks: 1. 275 shares Farmers & Merchants National Bank of Los
Angeles, Calif.
71,234.00
106,700.00
2. 678 shares Security-First National Bank of Los Angeles, Calif.
31,477.50
32,967.75
3. 140 units Security Company
None
4,340.00
4. 10 shares Wells Fargo Bank & Trust Co.
1,885.00
2,925.00
5. 500 shares Angeles Hospital Association
350.00
350.00
6. 13 shares Retail Merchants Credit Ass'n
1,285.00
1,285.00
C. Real Estate: 1. W. 8th, Broadway & Hill Sts., property under lease to A. Ham-
burger & Sons, Inc., and May Co.
1,185,421.44
4,000,000.00
2. #845 South Broadway property
101,107.46
315,600.00
3. 36/144th interest S. W. Cor. 15th & Hill
19,164.78
3,000.00
4. 2/10th interest N. E. Cor. 14th Place & Hill
13,205.88
2,000.00
5. 6/30th interest S. E. Cor. 14th & Hill Sts.
6,880.38
1,400.00
6. 1/2 interest N. E. Cor. 15th & Hill Sts.
51,433.30
6,000.00
7. Vallejo, Solano County property
None
None
8. 1404 South Hill St.
26,692.26
5,000.00
9. 149 W. 14th Place
39,937.31
6,000.00
10. 1318/22 South Hill St.
74,111.35
5,800.00
11. S. W. Cor. 15th & Hill Sts.
60,398.50
6,000.00
12. Temple Street property
10,589.35
3,500.00
13. 14th Place & S. Broadway
26,622.61
3,500.00
14. S. E. Cor. 10th & Main Streets
200,006.40
30,000.00
15. S.E. Cor. Ezra St. & Pico Blvd.h2,468.82
500.00
16. W. 15th btn. Hill & Olive Sts.
5,228.32
3,000.00
D. Office Furniture & Fixtures
None
100.00
E. Prepaid taxes and insurance
6,547.82
6,547.82
F. Sales Contract - Leroy Joseph
250.00
250.00
TOTAL ASSETS
$1,947,164.18
$4,557,632.27
LIABILITIES: A. Accounts Payable
$ 6,391.90
$ 6,391.90
B. Federal income and excess profits taxes
70,116.03
70,116.03
C. Note due A. Hamburger & Sons, Inc.
548,220.70
548,220.70
D. Lease rental deposits from lessees
5,750.00
5,750.00
TOTAL LIABILITIES
$ 630,478.63
$ 630,478.63
NET WORTH
$1,316,685.45
$3,927,153.64
*144 The profit and loss statements of Hamburger Realty Company for the years beginning 1936 to and including the year 1943 are as follows: Year
1936
Receipts
$282,839.06
Expenses
85,805.39
197,033.67
Fed. Income Tax
27,936.41
$169,097.26
1937
Receipts
$285,569.43
Expenses
80,345.72
205,223.71
Fed. Income Tax
28,709.47
$176,514.24
1938
Receipts
$291,041.44
Expenses
82,874.28
208,167.16
Fed. Income Tax
33,629.85
$174,537.31
1939
Receipts
$293,643.30
Expenses
80,615.30
213,028.00
Fed. Income Tax
34,694.30
$178,333.70
1940
Receipts
$272,540.06
Expenses
77,613.33
194,926.73
Fed. Income Tax
45,319.37
$149,607.36
1941
Receipts
$294,825.72
Expenses
73,272.94
221,552.78
Fed. Income Tax
70,116.03
$151,436.75
1942
Receipts
$293,138.32
Expenses
73,447.84
219,690.48
Fed. Income Tax
92,035.28
$127,655.20
1943
Receipts
$340,321.88
Expenses
93,711.28
246,610.60
Fed. Income Tax
116,529.99
$130,080.61
Dividends paid by Hamburger Realty Company for years beginning 1936 to and including the year 1943 are as follows: Year
1936 January 6
$183,082.14
1937 January 7
171,769.75
1938 January 7
176,514.24
February 17
1,091.32
1939 February 7
174,537.31
December 13
9,571.18
1940 February 8
176,260.91
March 7
2,072.79
1941 January 15
149,607.36
1942 March 12
151,436.75
1943 March 15
129,160.75 The assets, liabilities, *145 and net worth of the A. Hamburger & Sons, Inc., on the basic date hereof and the book value (Column A) and the fair market value (Column B) thereof are as follows: Column A
Column B
Fair Mar-
Book Value
ket value
ASSETS: A. Cash on hand and in banks
$ 113,706.56
$ 113,706.56
B. U.S. Treasury Bonds & Certificates: 1. $141,500 P.V. Series 1945-7 2 3/4%
139,139.06
152,245.15
Interest
1,134.95
302.67
2. $100 P.V. Series 1955-60 2 7/8%
98.50
111.41
Interest
.84
.22
3. $122,000 P.V. Series 1955-60 2 7/8%
120,633.84
135,915.63
Interest
730.73
272.79
4. $126,150 P.V. Series 1943-45 3 1/4%
124,272.81
133,324.78
Interest
854.15
2,027.10
5. $84,100 P.V. Series 1944-46 3 1/4%
82,841.87
89,776.75
Interest
569.43
1,351.40
6. $100 P.V. Series 1944-46 3 1/4%
100.00
106.75
Interest
.68
1.61
7. $150,000 P.V. Series 1947-52 4 1/4%
168,187.50
177,000.00
Interest
1,436.54
3,152.10
C. Notes Receivable of S. W. Levenson
1,500.00
1,500.00
Interest
11.25
None
D. Mortgages & Trust Deeds: 1. Estate of Bella A. H. Nathan
55,797.61
55,797.61
Interest
None
None
2. Armenian Gethsemane Church
3,000.00
3,000.00
Interest
52.50
20.00
E. Bonds: 1. $100,000 P.V.L.A. City High School District 4 3/4% 3/1 & 9/1
103,815.22
103,815.22
Interest
1,583.33
554.10
2. $3,100 P.V. Calif. Country Club 7% 5/1 and 11/1
3,050.00
3,050.00
Interest
None
None
F. Stocks: 1. 20 shares American Tel. & Tel.
$ 2,105.00
$ 3,057.50
2. 1,167 shares Texas Corporation
35,933.88
47,409.38
3. 1,505 shares Union Oil Co. of Calif.
25,812.50
22,575.00
4. 400 shares Inglewood Park Cemetery
16,000.00
30,000.00
5. 1,000 shares Standard Oil Co. of Calif.
41,375.00
23,000.00
G. Real Estate: 1. 955 S. Alvarado, Acacia Arms
44,798.22
30,000.00
2. 421 East 7th Street, Stadler Hotel
81,520.78
65,000.00
3. 5320 Olympic Blvd., Meadowbrook Apts.
55,345.66
25,000.00
4. 3123-9 Sunset Blvd., Westerly Terrace
33,175.20
17,500.00
5. 420 N. Coronado Street
20,644.63
15,000.00
6. 440 N. Coronado Street
20,111.59
15,000.00
7. 2311 Nottingham Street
23,959.68
16,500.00
8. 1034-40 W. Temple Street
15,695.49
13,500.00
9. N.E. Cor. Santa Monica & Serrano
51,636.53
25,000.00
10. 21 Avenue 26, Venice, California
3,703.76
2,500.00
11.4500/10 Santa Monica Blvd.
30,005.61
15,000.00
12. 901 Exposition Blvd.
30,902.37
27,500.00
13. 932 S. Mariposa Street
20,313.74
15,000.00
14. 2418/22 Brooklyn Street
20,655.87
18,750.00
15. S.E. Cor. 90th & Broadway
10,502.04
9,500.00
16. Cor. Jefferson & Grand, Warehouse
179,675.79
300,000.00
17. 2165/9 West Washington St.
25,461.25
15,000.00
18. 423 S. Western Avenue
53,254.60
18,000.00
19. 5425 Santa Monica Blvd., Flomar Apts.
63,261.33
50,000.00
20. 1627 Ingraham St.
32,639.24
25,000.00
21. 3800 S. Vermont Avenue
52,443.06
43,500.00
22. 1245 W. 49th Street
3,891.05
2,750.00
23. S.E. Cor. Clinton & Madison Streets
19,589.78
5,000.00
24. Lot 12 and part Lot 5, Sec. 18, Twp. 2, R. 2, W., Riverside
County (8,059/10,000ths Interest)
1,227.29
500.00
25. 8/30th interest 1402 S. Hill Street
15,099.43
1,850.00
26. 2/10th interest N.E. Cor. 14th Place and Hill St.
11,113.71
2,000.00
27. 5/144th interest S.W. Cor. 15th and Hill Sts.
3,022.72
425.00
28. 1/2 interest N.E. Cor. 15th & Hill Sts.
48,318.71
6,000.00
29. 1235 S. Hill Street
47,933.87
6,400.00
H. 104.167 shares Hamburger Realty Co.
382,525.73
406,251.30 *
I. Due from affiliated corporations: 1. David A. Hamburger Corporation at 2% (1-1-38)
560,000.00
420,000.00
Interest
6,096.49
1,026.76
2. David A. Hamburger Corporation at 2% (12-13-39)
12,000.00
12,000.00
Interest
259.00
80.00
3. Hamburger Realty Co. 2% (12-31-40)
548,220.70
548,220.70
Interest
None
None
4. David A. Hamburger Corporation - open account
161,299.29
161,299.29
J. Due from Officers and Stockholders: 1. Evelyn Hamburger $74,052.60 & $3,988.64
102,725.44
78,041.24
2. Estate of Belle A. H. Nathan $49,520.89 and $11,209.29
77,237.14
60,730.18
3. Jennie H. Marx - $113,174.55
150,899.40
113,174.55
4. Estate of M. A. Hamburger - $409,186.14
409,186.14
409,186.14
Interest
1,977.70
2,341.36
K. Open Accounts - Stockholders: 1. Evelyn Hamburger
94,972.06
94,972.06
2. Jennie H. Marx
94,502.53
94,502.53
3. Estate of M. A. Hamburger
87,504.20
87,504.20
4. Estate of Belle A. H. Nathan
45,560.83
45,560.83
L. Prepaid taxes, prepaid insurance and prepaid rent commissions
11,744.01
11,744.01
TOTAL ASSETS
$4,810,357.31
$4,436,883.88
LIABILITIES: A. Current Liabilities
$ 444,244.98
$ 444,244.98
B. Federal Income and Excess Profits Taxes
96,489.07
96,489.07
C. Lease rental deposits from lessees
14,382.50
14,382.50
TOTAL LIABILITIES
555,116.55
555,116.55
NET WORTH
$4,255,240.76
$3,881,767.33
*146 Under the terms of the lease between A. Hamburger & Sons, Inc. and The May Department Stores Co. dated March 30, 1923, A. Hamburger & Sons, Inc. was entitled to receive, during the period commencing November 1, 1941 and ended December 31, 1942, the sum of $604,078.16 and during this same period A. Hamburger & Sons, Inc. was obligated to pay to the Hamburger Realty Co. as rental for the same property the sum of $291,666.66. The excess of the amount that A. Hamburger & Sons, Inc. was entitled to receive from The May Department Stores Company over and above the amount A. Hamburger & Sons was required to pay to the Hamburger Realty Co. during the period commencing November 1, 1941 and ended December 31, 1942, was $312,411.49 which, when discounted at 6% (.9433) to the date of receipt, had a value at October 13, 1941 of $294,697.77 and, when discounted at 7% to the date of receipt, had a value at October 13, 1941 of $279,218.75. This sum is not, nor is any portion thereof, carried as an asset, and is not reflected in the above Balance Sheet. The profit and loss *147 statements of A. Hamburger & Sons, Inc. for the year beginning 1936 to and including the years 1943 are as follows: Year
1936
Receipts
$397,685.74
Expenses
59,928.64
337,757.10
Fed. Income Tax
41,360.14
$296,396.96
1937
Receipts
$445,422.81
Expenses
66,986.65
378,436.16
Fed. Income Tax
44,051.15
$334,385.01
1938
Receipts
$416,682.57
Expenses
60,718.16
355,964.41
Fed. Income Tax
50,694.87
$305,269.54
1939
Receipts
$416,551.04
Expenses
62,180.38
354,370.66
Fed. Income Tax
50,511.86
$303,858.80
1940
Receipts
$406,941.05
Expenses
60,936.33
346,004.72
Fed. Income Tax
71,493.34
$274,511.38
1941
Receipts
$410,128.89
Expenses
62,116.66
348,012.23
Fed. Income Tax
96,489.07
$251,523.16
1942
Receipts
$417,465.74
Expenses
60,998.51
356,467.23
Fed. Income Tax
135,911.53
$220,555.70
1943
Receipts
$154,476.52
Expenses
53,730.81
100,745.71
Fed. Income Tax
26,108.48
$ 74,637.23
Dividends paid by A. Hamburger & Sons, Inc. for years beginning 1936 to and including the year 1943 are as follows: Year
1936
March 24
$295,912.43
1937
January 7
262,478.08
January 27
50,734.00
December 29
6,350.00
1938
January 7
276,997.91
February 17
41,615.44
1939
February 7
305,269.54
1940
February 8
300,579.11
March 7
3,946.97
1941
January 15
274,511.38
1942
March 12
251,523.16
1943
March 15
222,687.57 On the 30th day of March, *148 1923, there was in existence a lease from the Hamburger Realty Company to A. Hamburger & Sons, Inc., for the property situated at Broadway, Eighth, and Hill Streets, Los Angeles, California, which lease terminated on December 31, 1942, and which lease provided for an annual rental of $250,000 payable by the said A. Hamburger & Sons, Inc. to Hamburger Realty Company. On the 30th day of March, 1923, A. Hamburger & Sons, Inc. subleased the property situated at Broadway, Eighth and Hill Streets, Los Angeles, California, to The May Department Stores Company for a term of twenty years, terminating December 31, 1942, for a total rental of $10,355,625.60 payable $43,148.44 per month. On the 30th day of March, 1923, Hamburger Realty Company leased the property situated at Broadway, Eighth and Hill Streets, Los Angeles, California, to The May Department Stores Company for a term of thirty years commencing January 1, 1943, and terminating December 31, 1972, for a total rental of $9,000,000, payable $25,000 per month beginning January 1, 1943. The May Department Stores Company is a reputable department store organization in good standing and a purchaser or owner of the shares of stock here in *149 issue would not have been unduly alarmed as to the receipt of the rentals provided for. The leases referred to in the findings did not provide for the lessee carrying full coverage insurance against such hazards as fire, lightning, explosion, flood and water, earthquake, and other like hazards, for the protection of the lessors, and the cost of such full coverage insurance would have been $10,487.38 for the first 45 years of said leases and $20,395.78 for the last five years of said leases. For several years prior to the basic date the said David A. Hamburger, president, general and executive manager of Hamburger Realty Company and A. Hamburger & Sons, Inc., had been ill and almost continuously confined to his bed. On or about the basic date and for some time prior thereto P. L. Nathan, secretarytreasurer of Hamburger Realty Company and A. Hamburger & Sons, Inc., was and had been in poor physical condition and showing signs of senility. Neither Evelyn Hamburger nor Jennie H. Marx prior to the basic date had any business experience. The children of David A. Hamburger are Catherine F. Hamburger, Florence H. Becker, Arthur Hamburger, and Howard Hamburger. None of the said children of *150 David A. Hamburger has had any experience in business and, except possibly for one of the daughters, had never held any position in either Hamburger Realty Company or A. Hamburger & Sons, Inc. The management on the basic date had not trained or attempted to train any younger people to take over the management or operation of either Hamburger Realty Company or A. Hamburger & Sons, Inc. For many years prior to and subsequent to the basic date there was severe inharmonious relations existing between the stockholders and directors of Hamburger Realty Company and A. Hamburger & Sons, Inc.; David A. Hamburger did not speak to P. L. Nathan or Evelyn Hamburger or Jennie Marx and the latter three did not speak to David A. Hamburger; each of said persons had his or her own separate attorney advising him or her in connection with the affairs of said corporations. The inharmonious relations referred to seriously affected adversely the formation of any business or financial or investment policy of either corporation, to the end that such policies remained in status quo and stagnated. The shares of stock of each of said corporations on the basic date were not attractive to banks as security for *151 a loan. The stockholders regularly each year, pursuant to an agreement, anticipated the earnings of the A. Hamburger & Sons, Inc. for the year and borrowed all of the earnings during such current year, leaving no earnings in the business for corporate operations. The stockholder members of the Hamburger family, by reason of being stockholders, had other advantages, such as borrowing money at a low rate of interest and from sources through the corporation, whereas, they could not have borrowed it from other sources on the same collateral. This advantage would not necessarily have been available to the purchaser of the minority interests in the corporations here involved. The fair market value of the property located at Broadway, Eighth and Hill Streets, Los Angeles, California, and subject to the leases from Hamburger Realty Company to The May Department Stores Company was arrived at by giving effect to said lease and the lease rentals discounted on a seven percent basis and adding the residual value of the said property. On the basic date 131 shares of the common stock of A. Hamburger & Sons, Inc. owned by decedent herein at the time of her death, was pledged to said corporation to *152 secure an indebtedness of $85,817.14 owing by the decedent to said corporation and evidenced by two promissory notes, one in the amount of $66,027.85 and one in the amount of $19,789.29, said notes bearing date of January 1, 1938 and being renewal notes of earlier dated notes. The fair market value of the 104.167 shares of common stock of the Hamburger Realty Company on October 13, 1941, was $3,900 per share. The fair market value of the 425.817 shares of the common stock of A. Hamburger & Sons, Inc. on October 13, 1941, was $1,000 per share. The parties have agreed to compute by further negotiations the amount of additional compensation for the executors and attorneys. Opinion Petitioners contend that the value of the stocks of these two corporations must be determined by taking into account the earnings of the corporation, the dividends paid and payable, marketability of the stock, the net worth of the company, the condition of the management of the company, a comparison of these stocks with other similar securities, market trends, conditions and restrictions affecting said stocks, the position of minority interests in said corporation and other similar facts. At the hearing they *153 introduced the testimony of two experts who gave their opinions as to the value of these stocks after being presented with hypothetical questions in which all of the above factors were included. Petitioners rest their case largely on the opinion of these experts. They also take the position that the fair market value of the stocks in this case is controlled by the rule expounded by many decisions and set forth in Section 81.10 of Treasury Regulations 105: The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. The respondent contends that when all of the peculiar facts in this case are considered, all elements which would ordinarily be weighed in arriving at the value of the stock, except the earnings of the corporation and the appraised value of their tangible assets, are of little use. In resolving these two positions certain basic facts impress us as controlling. Both of these corporations are strictly family concerns. All of the stockholders on the basic date, October 13, 1941, were brothers and sisters. No stock of either corporation had ever been sold outside the *154 family. 96 1/2 percent of the assets of the Hamburger Realty Company was real estate, and for some time prior to October 13, 1941, this corporation had been a dormant body whose operations consisted almost wholly of collecting rents and looking after the upkeep of improved and unimproved real estate. For many years past A. Hamburger & Sons, Inc., had been operating apparently on the basis of advancing the private economic welfare of its stockholders and officers rather than attempting to increase its own earning capacity. The balance sheet of this corporation shows that it had made 2 percent loans to corporations in which members of the Hamburger family were interested, in the face amount of $1,120,000. It had made loans secured either by mortgages or liens on stock to stockholders in the approximate amount of $800,000. Some of the notes involved in these loans are exhibits in this case and the final due date is 30 years after the date of the note. The re-payment of the note is by installment payments and no interest at all is required, except on overdue installments. The balance sheet also shows "open accounts" to stockholders in the gross amount of $384,000 and nothing is said about *155 any interest on these accounts. Since no interest is charged on the loans secured by notes except in case of default it is not to be presumed in the absence of testimony that any interest is charged on these open accounts. During the years 1940 and 1941 there were ample bonds on the market returning 4 percent interest and extremely high security. In fact, the balance sheet of the A. Hamburger & Sons, Inc., shows that they had some of these securities in their portfolio and if these corporations had been normally interested in the production of dividends for their stockholders, rather than in advancing the private economic welfare of their stockholders, a return of 4 percent on all of these various loans could easily have been obtained which would have added $69,000 to the income of A. Hamburger & Sons, Inc., for the year 1941. Allowing for tax deductions, this would have approximated a dividend source of $50,000 more than was actually received. Under these circumstances it is obvious that little help can be received from considering the dividends paid record of these corporations for the reason that their dividend paying system was entirely abnormal. Thus, we have two corporations *156 with no record of stock sales, a method of business operation unlike any normal corporation, and a system of paying dividends to stockholders whereby the stockholders profited more from receiving the use of the assets of the corporation to their own individual profit than they would have profited by receiving normal dividends. Under such conditions we do not feel that any system of evaluating this stock which would apply to a normal corporation would be useful here. The difficulty of arriving at a valuation is shown by the fact that both the petitioner and the respondent in this case have contended for two different sets of valuations at different times in this proceeding. In addition to these four values the balance sheet of the A. Hamburger & Sons, Inc., gives us a fifth book value for the stock of the Hamburger Realty Company. Petitioner, in his brief, chides the respondent for not having produced a "willing buyer" who would purchase this stock at the price for which the respondent contends. It might well then be asked of the petitioners as to why they did not, out of the turmoil of the Hamburger relatives, produce at least one member of the family who would be a "willing seller" *157 to sell his stock at the price contended for by petitioner. It would, of course, be unusual to find a stockholder such as those of the Hamburger Realty Company whose stock was held by A. Hamburger & Sons, Inc., at a book value of $3,672.23 a share who would be willing to sell such stock at $1,660.89, but if the stockholders of the Hamburger Realty Company in truth and fact believe what their experts and attorneys contend in this case they surely would consider such a sacrifice price a very advantageous sale. The question in this case is not new. The Board of Tax Appeals in Melville Hanscom, 24 B.T.A. 173 at page 175, says "The capital stock of the Eliot Realty Company was closely held by members of the decedent's family and no sales thereof were ever made to the public. Under such circumstances the value of the stock is determined on the basis of the assets underlying the capital stock, and the earnings of the corporation." Since, in the case at bar, by agreement, the parties have placed the value of the building of the May Department Store, which constitutes 8/9th of the assets of Hamburger Realty Co., at a fixed capitalization of the existing income and since the management of A. *158 Hamburger & Sons, Inc., has intentionally created a falsely low income by enriching themselves and the other stockholders through interest-free loans, it is held that the incomes of these companies have already received all of the consideration possible in arriving at the valuation of the stock and that for existing purposes the fair market value of the assets is the only remaining available factor that can be intelligently used in arriving at this valuation. In the case of Estate of Henry E. Huntington, Deceased, 36 B.T.A. 698, the Board had before it a closely held corporation in which there was no record of open sales and it said, on page 714, "The fair market value on May 23, 1927, of the 1,000 outstanding shares of stock of the Huntington Co. was equivalent to the fair market value of its net assets, to wit, $16,110,985.49 or $16,110.98549 per share." In the case of Bank of California v. Commissioner, 133 Fed. (2d) 428, the court approved the findings of the Board of Tax Appeals in a case where the issue was the valuation for estate tax purposes of stock in a closely held corporation in which there had been no sales. On page 430 the court says "The Board found that at the time *159 of decedent's death Oakburn stock (7,700 shares) had a fair market value equal to Oakburn's net worth." On the basis of the above precedents we would be inclined to find a somewhat larger valuation than is contended for by the respondent. However, since the respondent asks for a valuation of $3,900 a share for the stock of the Hamburger Realty Company and for a value of $1,000 a share for the stock of A. Hamburger & Sons, Inc., we will approve that valuation. In arriving at this determination we have weighed and accepted the preponderance of the evidence as we have seen it. We have not relied upon any presumption that the original determination of the Commissioner in his notice of deficiency was correct. Decision will be entered under Rule 50. Footnotes
*. This amount, by agreement, is inserted after a finding by the Court. In the original as submitted this amount was left vacant.↩